

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00019-CV

_____

IN RE: THE COMMITMENT OF GREGORY A. JONES

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 185,786-C

Concurring and Dissenting Memorandum Opinion by Justice Wallach

## CONCURRING AND DISSENTING MEMORANDUM OPINION

I respectfully concur in part with the majority opinion and dissent in part from it. The majority holds that the evidence is legally sufficient to support the jury's verdict that Jones suffers from a behavioral abnormality that likely predisposes him to committing sexually violent offenses in the future. In this holding, I concur.

The majority also holds that the language of the *Allen*[1] charge as a whole and in the context of the circumstances in which it was issued is impermissibly coercive and harmful error causing the rendition of an improper judgment. I respectfully dissent from this holding. Although the *Allen* charge had possibly coercive elements, no reversible error is shown from the record. Thus, I would respectfully overrule this issue and address Jones's remaining issues.

The analytical starting point regarding coerciveness of *Allen* charges in civil cases is *Stevens v. Travelers Ins.*, 563 S.W.2d 223, 229–32 (Tex. 1978). In *Stevens*, the court was confronted with resolving a divergence among the courts of appeals regarding the proper analysis of *Allen* charges in civil cases to determine the issue of impermissible coerciveness. *Id.* at 226–29. In announcing its resolution of this divergence, the court noted three principles that are important to this analysis:

> Our law does not contemplate that every jury will function perfectly and, to that end, broad discretion is vested in the trial judge to aid in administering and expediting the fact finding process. It is this concern for the expeditious administration of justice that must be balanced against the concern for impartiality in the fact finding process in

---

[1] *Allen v. United States*, 164 U.S. 492, 501–02, 17 S. Ct. 154, 157 (1896).

2

determining whether it is proper for judges to insert themselves into that process at all.

. . . .

. . . Words of instruction in one context and time frame may be coercive but in another may be no more than a permissible effort on the part of the trial judge to bring the deliberations of the jury to a conclusion in a manner fair to the litigants.

Therefore, in order to test a particular charge for coerciveness, it is necessary that the charge be first broken down into its several particulars and analyzed for possible coercive statements. A possibly coercive statement will not invalidate the charge, however, unless it retains its coercive nature when the charge is then read as a whole and all of the circumstances surrounding its rendition and effect are considered.

*Id.* at 228–29.

The *Stevens* court did not expressly address the concept of reversible error. However, the court looked not only to the language of the charge but also to its effect in ruling that the charge as a whole did not have a coercive effect. *Id.* at 232 (noting that the jury deliberated an additional four hours after a weekend break before reaching a verdict). Nevertheless, in light of Texas Rule of Appellate Procedure 44.1(a), the need to show reversible error seems to be required. Tex. R. App. P. 44.1(a); *see Elec. Bankcard Sys., Inc. v. Retriever Indus., Inc.*, No. 14-04-00452-CV, 2005 WL 3435294, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2005, no pet.) (mem. op.) (noting in dictum that even if the appellant had not waived its complaint that the charge was coercive, the charge was not reversible under Rule 44.1(a)).

As stated by Rule 44.1(a),

(a) No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

> (1) probably caused the rendition of an improper judgment; or

> (2) probably prevented the appellant from properly presenting the case to the court of appeals.

Tex. R. App. P. 44.1(a); *see In re Commitment of Jones*, 602 S.W.3d 908, 913 (Tex. 2020) (op. on reh'g); *see also State v. Williams*, 932 S.W.2d 546, 556 (Tex. App.—Tyler 1995), *writ denied*, 940 S.W.2d 583 (Tex. 1996) (per curiam). Interpretations regarding the coercive effects of *Allen* charges in criminal cases are persuasive authority in these sexually-violent-predator commitment appeals. *See In re Commitment of Jurischk*, No. 03-18-00670-CV, 2019 WL 2308594, at *8 (Tex. App.—Austin May 31, 2019, no pet.) (mem. op.). In criminal jurisprudence, if there is a defect in the charge due to coerciveness, to constitute reversible error there must be some showing that the instruction influenced an improper verdict. *Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at *14 (Tex. App.—Fort Worth Jan. 28, 2021, pet. filed) (mem. op., not designated for publication); *O'Brien v. State*, No. 14-94-01218-CR, 1996 WL 711221, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12, 1996, pet. ref'd) (not designated for publication); *Jackson v. State*, 753 S.W.2d 706, 712 (Tex. App.—San Antonio 1988, pet. ref'd); *Griffith v. State*, 686 S.W.2d 331, 333 (Tex. App.—Houston [1st Dist.] 1985, no pet). Thus, a coercive charge that improperly influences a verdict

is harmful under either standard; a coercive charge that does not is harmless under either standard.

The *Allen* charge given in this case provided, with the allegedly objectionable portions bolded,

> **This case has to be settled by some twelve jurors. I regard all of you as honest and intelligent jurors. I do not know of any twelve jurors who can do better than you can. I think if you can settle it, and you should settle it, if possible**.
>
> I have no desire to attempt to coerce you into a verdict. This is a matter for each of you to determine for yourself, **but it is to the interest of society that you should reconsider your differences, and, if you can, agree upon a verdict.**
>
> You will please return to your room, **and if you can reconcile your differences and agree upon a verdict, I hope you will please do so.**

Applying the *Stevens* procedure, I first examine the challenged portions separately for their potential coercive effect. I agree with the majority that the first two sentences seem innocent and a neutral observation akin to the "ably tried by experienced lawyers" comments addressed in *Stevens*, 563 S.W.2d at 230; *see also Freeman v. State*, 115 S.W.3d 183, 187 (Tex. App.—Texarkana 2003, pet. ref'd) (holding it is not coercive to instruct a jury as part of an *Allen* charge that if they cannot reach a verdict then a mistrial will result). I disagree with the majority's view of the third sentence. In my opinion, the third sentence is not problematic as it is neutral on its face. It simply reaffirms the jury's ability to do its job. *See Stevens*, 563 S.W.2d at 230. Likewise, in my opinion, the instruction in the second paragraph about "reconsidering

5

your differences" in the "interest of society" is not coercive. It does no more than instruct the jury that they are to conduct themselves in a reasonable and mature manner. *See id.* at 231.

However, the fourth sentence of the first paragraph, the last clause of the second paragraph, and the last sentence of the charge, taken together—"I think if you can[,] settle it; and you should settle it, if possible"; "if you can, agree upon a verdict"; and "if you can reconcile your differences and agree upon a verdict, I hope you will please do so"—are possibly coercive as they tell the jurors that it would be displeasing to the court if they do not reach a verdict. *See id.* at 230. I thus agree with the majority that these statements in the charge have a possibly coercive effect, but that is the extent of my agreement.

Having found a portion of the charge to be possibly coercive when standing alone, the next step is to "examine the charge as a whole and the circumstances surrounding it in order to properly gauge its effect." *Id.* at 232. In light of the requirements of Rule 44.1(a), this reference in *Stevens* to gauging the effect of possibly coercive language equates to determining if the *Allen* charge, as worded, constituted reversible error. *See* Tex. R. App. P. 44.1(a); *Stevens*, 563 S.W.2d at 230; *see also Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962) (stating reversible-error rule under former Civil Procedure Rules 434 and 503: "Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is

6

reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it probably did cause the rendition of an improper judgment in the case.").

Applying *Stevens*, I initially note that the trial judge mitigated the possibly coercive effect of the above referenced language by telling the jurors that he had no desire to coerce them into a verdict. Thus, while the trial judge may have left the jury with the impression that reaching a verdict would please the court, he also directly told the jurors that he had no desire to coerce them into reaching a verdict, diluting any coercive effect from language indicating that a verdict would please the court. *See Stevens*, 563 S.W.2d at 232 (holding that trial court's telling the jurors not to forsake their personal convictions diluted any coercive effect of trial court's statement that it would disapprove the jury's failure to reach a verdict). Other language in the charge further dilutes any possible coercive effect. Although the majority notes that the trial court in the instant matter did not include any language in the *Allen* charge expressly stating that the jurors should not forsake their own personal convictions to reach a verdict, the trial court did include this language, "This is a matter for each of you to determine for yourself . . . ," which is the equivalent of language stating that the jurors should not forsake their own convictions to reach a verdict. *See Kelly v. State*, 310 A.2d 538, 542 (Md. 1973) (upholding an *Allen*-type charge delivered to the jury before deliberations that contained the instruction, "[I]t is up to you to determine for yourselves . . . ."). The dilution is likewise equivalent.

To further address whether the *Allen* charge here is reversible, I look to criminal law because this concept has been explored in more detail in the criminal jurisprudence of this state than in the civil context. In the criminal context, an *Allen* charge may be coercive on its face or the charge may have a coercive effect "in its context and under all the circumstances." *Thetford*, 2021 WL 278913 at *13. The language of "evaluating an *Allen* charge's coercive effect in its context and under all the circumstances" is similar to the *Stevens* court's language about examining the charge as a whole and the circumstances surrounding it to properly gauge its effect. *Compare id.*, *with Stevens*, 563 S.W.2d at 229. Such being the case, I rely not only on *Stevens* but also on criminal cases which have applied this test.

In *Thetford*, this court summarized a nonexclusive list of factors to consider in determining whether an *Allen* charge demonstrates actual jury coercion:

> (1) the length of deliberations prior to the *Allen* charge; (2) the length of the trial; (3) the amount and complexity of the evidence involved; (4) the nature of the case; (5) whether the *Allen* charge was premature; (6) whether the jury was required to endure "marathon deliberations"; (7) the number of *Allen* charges given; (8) whether the *Allen* charge cautioned the jurors not to violate their consciences; (9) whether the trial court singled out or pressured the minority jurors; (10) the trial court's knowledge of or inquiry into the jury's numerical division; (11) the length of deliberations following the *Allen* charge; (12) the jury's notes and requests to review evidence after the *Allen* charge; and (13) whether the jurors each affirmed the verdict upon polling.

2021 WL 278913, at *14. Applying these factors to this case, I would respectfully hold that the *Allen* charge did not have a coercive effect in its context and under all the circumstances.

The first five factors listed in *Thetford*—the length of deliberations prior to the *Allen* charge, the length of the trial, the amount and complexity of the evidence involved, the nature of the case, and whether the *Allen* charge was premature—are not problematic. That is, before receiving the *Allen* charge, the jury deliberated approximately six hours after a seven-hour trial involving three witnesses, two of whom were psychologists testifying about complex psychological disorders, psychological testing, and testing results to assess civil commitment for a sexual predator disorder. *See Johnson v. State*, No. 01-17-00903-CR, 2018 WL 4623738, at *4 (Tex. App.—Houston [1st Dist.] Sept. 27, 2018, no pet.) (mem. op., not designated for publication) (holding *Allen* charge not coercive in a one-day sexual assault case, with testimony from a DNA expert, two police officers, a sexual assault nurse, the complainant, and the defendant, where jury was deadlocked after one day of deliberations); *Katzenberger v. State*, 439 S.W.3d 566, 570–71 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding that trial court did not abuse its discretion by denying a motion for mistrial and issuing an *Allen* charge after ten and a half hours of deliberation on a seven-hour trial in a prosecution for aggravated sexual assault of a child); *Love v. State*, 627 S.W.2d 457, 458–59 (Tex. App.—Houston [1st Dist.] 1981, no writ) (holding in credit-card abuse case that trial court did not abuse its discretion by refusing to declare mistrial when two-hour trial was followed by six hours of deliberation during which jury sent three notes indicating deadlock), *disapproved of on other grounds by Ortega v. State*, 668 S.W.2d 701 (Tex. Crim. App. 1983).

9

The next two criteria, whether the jury was required to endure "marathon deliberations" and the number of *Allen* charges, are nonfactors here. There was no issue of marathon deliberations, and the trial court gave only one charge requiring continued deliberations.

I address the eighth factor—whether the *Allen* charge cautioned the jurors not to violate their consciences—above when I discuss the mitigating effects of the charge as a whole. To reiterate, although the charge did not use the exact language of not violating their consciences, it did tell the jurors that they each should determine the case individually and that they should individually decide whether to reconsider their positions. Thus, this charge communicated an equivalent message to a charge that expressly instructs a jury not to violate its conscience; it did not pressure the jurors for a verdict. *See Miller v. State*, No. 05-01-00510-CR, 2002 WL 1752168, at *2 n.4, *4 (Tex. App.—Dallas July 30, 2002, pet. ref'd) (not designated for publication) (upholding an *Allen* charge instructing jurors to respect the opinions of each other and to try to reach a verdict but also stating, "[N]ever assent to a verdict[] which violates the instructions of the Court[,] a verdict which finds as a fact that which under the evidence and your conscience you believe to be untrue.").

The ninth and tenth *Thetford* factors do not apply here. Whether the trial court singled out or pressured the minority jurors is not a factor here as that did not happen in this case. Likewise, the trial court did not have knowledge of or inquire into the jury's numerical division.

10

The eleventh and twelfth factors—the length of deliberation following the *Allen* charge and the jury's notes and requests to review evidence after the *Allen* charge—are also not problematic here. The jury advised the trial court of its deadlock around 4:15 P.M., the *Allen* charge was given about 4:49 P.M., a break was taken from 5:00 P.M. until 5:20 P.M., and the verdict was rendered at 6:30 P.M. without the jury's requesting to see or hear any evidence from the reporter's record. *See Mason v. State*, Nos. 07-19-00066-CR, 07-19-00067-CR, 2020 WL 4355522, at *8 (Tex. App.—Amarillo July 29, 2020, no pet.) (mem. op., not designated for publication) (holding, when jury had deliberated eight hours before *Allen* charge, that verdict rendered about an hour after their receiving *Allen* charge with no request to review additional evidence was not coercive); *Minze v. State*, No. 02-15-00352-CR, 2016 WL 4474352, at *3–5 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication) (holding, when jury had deliberated two hours before the *Allen* charge, that verdict delivered fifteen to twenty minutes after *Allen* charge with no request to review additional evidence was not coercive).

The final *Thetford* criterion is whether the jury was polled and whether each juror affirmed the verdict upon polling. In this case, when the affirmative verdict was returned, each juror individually confirmed, when polled by the court, that this verdict was his or hers without any stated reservations or complaints of coercion. *See Thetford*, 2021 WL 278913, at *18.

11

The majority contends that the *Allen* charge, at a minimum, forced this unanimous verdict without the court's properly advising the jury that a 10-2 "no" verdict was also possible on the sexual predator question. For the reasons outlined above, the *Allen* charge did not force the verdict. That the *Allen* charge forced the verdict's unanimity is sheer speculation.

The instruction Jones requested, but which the trial court erroneously refused, was that only ten out of twelve votes were required to answer "no" to the sexual predator question. *Jones*, 602 S.W.3d at 911. The record does not indicate what the division was among the jurors regarding "yes" and "no" answers prior to their deadlock. Under the circumstances, it would take a great deal of speculation to envision a scenario where twelve jurors voted for a "yes" answer seventy minutes after receiving an *Allen* charge but a substantial number of them had voted for a "no" answer prior to the deadlock note. Nothing in the record remotely suggests that conclusion, especially since the evidence was so overwhelmingly weighted toward a "yes" answer.

In conclusion, I agree with the majority that the evidence is legally sufficient to support the jury's verdict that Jones is a sexually violent predator. I concur with the majority opinion to that extent.

I disagree with the majority's decision that the *Allen* charge in this case was unduly coercive and reversible error. Based on the Supreme Court's guidance in *Stevens* and the thirteen criteria laid out in *Thetford*, I would hold that the *Allen* charge

12

in this case was not unduly coercive, or in the alternative, that any error is not reversible, and I would overrule this issue and reach Jones's remaining issues. Because the majority does not, I respectfully dissent.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  May 6, 2021